IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEROME L. JOHNSON,

    *Plaintiffs*,

    v.

BALTIMORE POLICE DEPARTMENT, et. al.,

    *Defendants*.

Civil Action No. ELH-19-698

## MEMORANDUM OPINION

This civil rights case arises from the wrongful conviction of plaintiff Jerome L. Johnson, who spent nearly three decades in prison for a murder that he did not commit. As a result, Mr. Johnson has sued the Baltimore City Police Department ("BPD" or the "Department") and four BPD detectives, in their individual capacities: Frank Barlow, Daniel Boone, Kevin Davis, and Gerald Goldstein (the "Officer Defendants" or "Officers"). ECF 1 (the "Complaint"). Plaintiff alleges that during the investigation of a 1988 murder, the Officer Defendants concealed powerful exculpatory and impeachment evidence, which resulted in plaintiff's wrongful conviction and subsequent incarceration. *See id.* ¶ 3. Mr. Johnson also alleges that the Officers' actions were "part of a longstanding pattern and practice" of the BPD. *Id.* ¶ 142.

As discussed, *infra*, by Memorandum Opinion (ECF 45) and Order (ECF 46) of March 10, 2020, I denied the motion to dismiss filed by the BPD and granted in part and denied in part motions to dismiss filed by the Officer Defendants. Thereafter, the BPD and the Officer Defendants answered the suit. ECF 49; ECF 50. And, they filed a "Joint Motion To Bifurcate And Stay Discovery" under Fed. R. Civ. P. 26(b) and 42(b). ECF 52. The motion is supported by a memorandum of law. ECF 52-1 (collectively, the "Motion" or the "Motion to Bifurcate"). In

the Motion, the defendants seek to bifurcate the trial of plaintiff's § 1983 claims against the Officer Defendants from the *Monell* claim against the BPD.  ECF 52-1.[1]  They also seek to stay discovery as to the *Monell* claim.  Plaintiff opposes the Motion.  ECF 57.  The defendants replied.  ECF 62.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105(6).  For the reasons that follow, I shall deny the Motion, without prejudice.

## I.    Background[2]

Aaron Taylor was murdered on July 14, 1988.  ECF 1, ¶ 23.  In 1989, Mr. Johnson, then twenty years of age, was convicted of the first-degree murder of Taylor, as well as use of a handgun in the commission of a felony.  *See id.* ¶¶ 20, 123.  He was sentenced to life imprisonment plus a consecutive term of twenty years.  *Id.* ¶ 127.

In the decades that followed, plaintiff persistently challenged his conviction in both State and federal court.  *Id.* ¶ 130.  In 2011, Mr. Johnson learned of the existence of exculpatory evidence that had not been disclosed during the prosecution of the case.  *See id.* ¶¶ 38-44, 49, 131.  It included documentation of an interview that a BPD officer conducted with L.S., a key witness, approximately thirty minutes after the murder (the "July 14 Report").  *Id.* ¶¶ 38-44, 49.  The witness never mentioned plaintiff.  *Id.* ¶ 49.  Officer Jones and Detective Davis both signed the

---

[1] The Motion was filed by all defendants except Detective Davis.  *See* ECF 52 at 1; Docket.  However, the Reply was filed by "Defendants."  ECF 62.  And, the Officer Defendants are represented by the same lawyers.  Therefore, I shall assume that Davis was inadvertently omitted from the Motion.

[2] I incorporate here the factual background set forth in my Memorandum Opinion of March 10, 2020.  *See* ECF 45 at 3-13.  As the Motion concerns a procedural issue, I need not restate all of the relevant facts.  However, I shall restate the broad contours of the case, which are useful to understanding and resolving the current dispute.

July 14 Report, and that report was also allegedly known to Detectives Barlow, Boone, and Goldstein.  *Id.* ¶¶ 45, 46, 51.

A few days after the murder, on July 19, 1988, Detectives Davis and Barlow interviewed L.S. and her mother.  *Id.*  ¶ 56.  The interview was memorialized in a report prepared by Detective Davis (the "July 19 Report").  During the interview, L.S. made several statements that contradicted what she previously told the police.  *Id.* ¶ 58.  L.S. stated that she saw Mr. Johnson give the shooter a small handgun while they were standing outside a bar.  *Id.* ¶ 59.  L.S. also said that the shooter pointed the gun at the victim, but it twice misfired.  *Id.*  Further, she told the detectives that she "ran into the store right behind the victim and then fled after the first shot, hearing three more [shots] as she ran away."  *Id.* ¶ 60.

Detective Davis took handwritten notes of that interview with L.S.  *Id.* ¶ 64.  The notes allegedly reflect that L.S. was inside the bar when four shots were fired.  *Id.* ¶ 66.  Yet, the July 19 Report reflects that L.S. fled after the first shot was fired.  *Id.*

Plaintiff alleges that Detectives Davis and Barlow "pressured" the witness to "falsely add[] Mr. Johnson to her account of who was involved in the murder of her cousin."  *Id.* ¶ 69.  And, plaintiff alleges that Detectives Davis and Barlow "purposefully altered the number of suspects in the July 19 Report to allow the addition of Mr. Johnson as one of the suspects."  *Id.* ¶ 70.  Further, plaintiff alleges that the Officer Defendants never provided the July 19 Report or Detective Davis's notes to the prosecutor or to Mr. Johnson.  *Id.* ¶ 75.

Moreover, at the time, Mr. Johnson denied having been involved in Mr. Taylor's death.  *Id.* ¶ 88.  He explained to Detective Goldstein that, at the time of the shooting, he was standing on the corner of Reisterstown Road and Lucille Avenue with Alvin Morgan.  *Id.* ¶ 88.  Mr. Johnson also told Detective Goldstein that he spoke with Officer Owens on the night of the murder.  *Id.* ¶ 89.

3

Nevertheless, the Officer Defendants never spoke with Officer Owens about his interaction with Mr. Johnson on July 14, 1988.  *Id.* ¶¶ 91, 101.  Moreover, the Officer Defendants allegedly failed to interview Alvin Morgan, and made no efforts to corroborate Mr. Johnson's alibi.  *Id.* ¶ 91. Further, plaintiff alleges that the Officers "deliberately concealed" this exculpatory information. *Id.* ¶ 92.

Recently, Mr. Johnson's counsel presented evidence concerning Mr. Johnson's innocence to the Conviction Integrity Unit ("CIU") of the Baltimore City State's Attorney's Office.  *Id.* ¶¶ 132-33.  After an investigation, the CIU joined plaintiff in seeking vacatur of his conviction.  *Id.* ¶ 136.  In July 2018, after plaintiff had spent nearly thirty years in prison, the Circuit Court for Baltimore City vacated his convictions.  *Id.* ¶ 139.

This suit followed on March 6, 2019.  ECF 1.  It contains eleven counts.  Counts I through VI are filed under 42 U.S.C. § 1983, and Counts VII through XI assert claims under Maryland law. *Id.* ¶¶ 182-276.  As is especially relevant here, Counts I through IV allege violations of plaintiff's rights to due process, arising out of the Officer Defendants' suppression of exculpatory and impeachment evidence and their alleged fabrication of evidence against Mr. Johnson.  *Id.* ¶¶ 182-201.  In Count VI, plaintiff lodges a "*Monell*" claim against the BPD, pursuant to the Fifth and Fourteenth Amendments.  *Id.* ¶¶ 209-16; *see Monell v. City Dep't of Soc. Servs*., 436 U.S. 658 (1978).

The BPD moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  ECF 24.  Detectives Barlow, Boone, and Goldstein moved to dismiss the Complaint under Rule 12(b)(6).  ECF 25; ECF 25-1.  And, Detective Davis filed a partial motion to dismiss under Rule 12(b)(6).  ECF 22; ECF 22-1.  I denied the BPD's motion, and granted in part and denied in part the motions of Davis and the other officers.  *See* ECF 46.  In particular, I concluded

that plaintiff's allegations that the Officer Defendants withheld exculpatory evidence from the prosecution were sufficient to support a § 1983 claim for violation of due process, in violation of the Fourteenth Amendment, based on *Brady v. Maryland*, 373 U.S. 83 (1963).  *See* ECF 45 at 40-45.  The Motion to Bifurcate followed.

## II.    Discussion

### A.

Defendants seek to bifurcate for trial the claims against the Officer Defendants and the Department, pursuant to Fed. R. Civ. P. 42(b).  ECF 52.  Further, defendants urge the Court to stay discovery as to the BPD, pending resolution of the § 1983 claims against the Officers.  *Id.*

Rule 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Notably, Rule 42(b) is disjunctive, meaning "[o]nly one of these criteria need be met to justify bifurcation."  *Saxion v. Titan-C-Mfg.*, 86 F.3d, 553 556 (6th Cir. 1996) (citations omitted).

District courts have "broad discretion in deciding whether to bifurcate claims for trial, and the exercise of that discretion will be set aside only if clearly abused."  *Beasley v. Kelly*, DKC-10-0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010) (citing *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993), *cert. denied*, 510 U.S. 915 (1993)); *see also Shetterly v. Raymark Indus., Inc.*, 117 F.3d 776, 782 (4th Cir. 1997) (decisions whether to bifurcate are reviewed for abuse of discretion); *Brown v. Bailey*, RDB-11-1901, 2012 WL 2188338, at *4 (D. Md. June 13, 2012); *Dawson v. Prince George's Cty.*, 896 F. Supp. 537, 539 (D. Md. 1995); 9A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2388 (3d ed. 2019) ("It is well-established by a wealth of case law that ultimately the question of whether to conduct separate trials under Rule

42(b) should be, and is, a matter left to the sound discretion of the trial court[.]").

**B.**

Several of plaintiff's claims are predicated on 42 U.S.C. § 1983.  Under § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377, 383 (2012).  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

"To state a claim under Section 1983, a plaintiff must show that the alleged constitutional deprivation at issue occurred because of action taken by the defendant 'under color of . . . state law.'"  *Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Filarsky*, 566 U.S. at 383; *Wahi v. Charleston Area Medical Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009).  The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical."  *Philips*, 572 F.3d at 180.

In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the Supreme Court explained that a municipality is subject to suit under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated the plaintiff's rights.  *Id.* at 690-91.  As the *Monell* Court said, 436 U.S. at 694, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

6

official policy, inflicts the injury the government as an entity is responsible under § 1983." *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  Therefore, "Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights."  *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994); *see Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir. 2001).

Notably, *Monell* liability attaches "only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original); *accord Holloman v. Markowski*, 661 F. App'x 797, 799 (4th Cir. 2016) (per curiam), *cert. denied*, 137 S. Ct. 1342 (2017).  In other words, "a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'"  *Lozman v. City of Riviera Beach*, ___ U.S. ___, 138 S. Ct. 1945, 1951 (2018) (quoting *Monell*, 436 U.S. at 691).

In sum, a viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights.  *See, e.g.*, *Brown*, 520 U.S. at 403; *Kirby*, 388 F.3d at 451; *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

It is axiomatic that a *Monell* claim cannot lie "where there is no underlying constitutional violation by the employee."  *Young*, 238 F.3d at 579; *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1996) (per curiam) ("[N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when

the jury has concluded that the officer inflicted no constitutional harm."); *Anderson v. Caldwell Cty. Sherriff's Office*, 524 F. App'x 854, 862 (4th Cir. 2013) ("No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee."); *Burgess v. Balt. Police Dep't*, RDB-15-0834, 2016 WL 1159200, at *1 (D. Md. Mar. 23, 2016); *Williamson v. Prince George's Cty.*, DKC-10-1100, 2011 WL 1065780, at *2 (D. Md. Mar. 21, 2011).   Consequently, there is no vicarious liability under § 1983.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane*, 355 F.3d at 782.

As a result, in most cases, a plaintiff's § 1983 claims against a municipality or a supervisor "hinge on his ability to show that [individual defendants] violated his constitutional rights." *Dawson*, 896 F. Supp. at 540; *see Young*, 238 F.3d at 579; *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."), *cert. denied*, 502 U.S. 1095 (1992); *Burgess*, 2016 WL 1159200, at *1; *Williamson*, 2011 WL 1065780, at *2; *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) ("Under Section 1983, to hold the [supervisor and municipal] Defendants liable, Plaintiff must first establish that at least one [individual] Defendant violated his constitutional rights.").

Cases that contain *Monell* claims "are good candidates for bifurcation."  *Beasley*, 2010 WL 3221848, at *3.  Bifurcation can, in certain circumstances, advance the efficient and convenient resolution of the case because where there is no "initial finding that a government employee

violated a plaintiff's constitutional rights, . . . . no subsequent trial of the municipality is necessary." *Id.* In addition, bifurcation might spare the parties from expending valuable resources in discovery, because resolution of the claims as to the individual defendants may obviate the need to litigate the *Monell* claim. *See Burgess*, 2016 WL 1159200, at *1 (finding bifurcation appropriate "[g]iven the derivative nature of [the police department's] potential liability"); *Taylor v. Maryland*, DKC-10-2167, 2010 WL 5247903, at *2 (D. Md. Dec. 16, 2010) ("Because of the secondary nature of a municipality on potential liability under § 1983, courts have frequently bifurcated discovery and or trial so that cases proceed first with a trial against the individual defendant(s) alleged to be primarily liable[.]" (alteration in original)).

Equally important, bifurcation might prevent the potential prejudice to individual defendants that might result from the introduction of inflammatory evidence concerning the municipality's policies, practices, or customs. *Taylor*, 2010 WL 5247903, at *2; *Beasley*, 2010 WL 3221848, at *3. Although such evidence "is relevant under the *Monell* analysis," it might unfairly bias the jury as to the liability of the individual defendants. *Beasley*, 2010 WL 3221848, at *3 (observing that the introduction of instances of police misconduct at trial "would be highly prejudicial to the individual government employees").

Judges in this district have repeatedly ruled that bifurcation "is appropriate and often desirable" in cases involving both § 1983 claims against individual police officers and *Monell* claims. *Brown*, 2012 WL 2188338, at *4; *see also, e.g.*, *Peprah v. Williams*, GLR-18-990, 2019 WL 224245, at *10 (D. Md. Jan. 15, 2019) ("This Court has repeatedly held that bifurcation is appropriate in cases involving § 1983 claims against individual defendants and municipalities."); *accord Peterson v. Prince George's Cty*, PWG-16-1947, 2017 WL 2666109 at *4 (D. Md. June 21, 2017); *Humbert v. O'Malley*, WDQ-11-0440, 2012 WL 1066478, at *2 (D. Md. Mar. 27,

2012), *rev'd on other grounds*, 866 F.3d 546 (4th Cir. 2017); *James v. Frederick Cty. Pub. Schs.*, 441 F. Supp. 2d 755, 762 (D. Md. 2006); *Robertson v. Prince George's Cty.,* 215 F. Supp. 2d 664, 665 (D. Md. 2002); *Dawson*, 896 F. Supp. at 539; *Marryshow*, 139 F.R.D. at 319.   Nevertheless, "'[e]ach case must be considered in light of its particular facts and circumstances.'" *Noel v. Artson*, WMN-06-2069, 2006 WL 8427663, at *3 (D. Md. Nov. 1, 2006) (quoting *Marryshow*, 139 F.R.D. at 319).

## C.

Defendants contend that bifurcation of trial will best serve the interests of judicial economy and reduce the risk of unfair prejudice to all defendants.  *See* ECF 52-1 at 3-6.  In addition, defendants ask the Court to "order a stay of discovery against BPD in connection with the § 1983 *Monell* claim."  *Id.* at 8.  They assert that postponing the "enormous and lengthy" discovery for the *Monell* claim "will conserve both judicial and municipal resources, and likewise those of Plaintiff."  *Id.* at 9.

Mr. Johnson disagrees with defendants at every step.  First, he counters that a ruling as to bifurcation of trial is premature because, at this stage, it is unknown what *Monell* evidence will be discovered and presented at trial.  ECF 57 at 10.  Accordingly, he asks the Court to "reserve judgment until the parties can more specifically articulate the arguments for and against bifurcation of the trial."  *Id.* at 10-11 (citing *Noel*, 2006 WL 8427663, at *3).

Second, Mr. Johnson argues that bifurcation of trial will render the litigation more costly and less efficient.  *See* ECF 57 at 15-19.  In plaintiff's view, the general rule that "one trial is nearly always more efficient than two" is especially true in this case, as the evidence needed to prove the *Brady* claims against the Officers and the *Monell* claim against the BPD will likely be

"intertwined." *Id.* at 17-18.[3]  Moreover, Mr. Johnson maintains that a single trial will not pose a

risk of unfair prejudice to defendants and, in any event, that the Court's application of Fed. R.

Evid. 403 and use of limiting jury instructions would adequately guard against such risk.  *See id.*

at 19-21.  Alternatively, plaintiff urges the Court to permit *Monell* discovery to proceed even "if

the Court decides that bifurcation is appropriate." *Id.* at 22.

In § 1983 suits with *Monell* claims, bifurcation often facilitates a more streamlined

discovery process and a more efficient trial.  *See Taylor*, 2010 WL 5247903, at *2 ("Streamlining

the issues and limiting discovery . . . will curb rather than increase costs[.]").  However, this is not

a "one-size fits all" determination.  *See Marryshow*, 139 F.R.D. at 319; *Noel*, 2006 WL 8427663,

at *3.  Whether bifurcation would serve judicial economy depends in part on the extent to which

the claims against the Officers and the *Monell* claim will involve intertwined evidence.

Determining whether the Officers violated Mr. Johnson's constitutional rights is a

prerequisite to establishing liability against the BPD.  *See Young*, 238 F.3d at 579; *Peprah*, 2019

WL 224245, at *10; *Burgess*, 2016 WL 1159200, at *1; *Williamson*, 2011 WL 1065780, at *2;

*Marryshow*, 139 F.R.D. at 319.  Mr. Johnson's constitutional claims against the Officers focus on

alleged *Brady* violations.

In *Brady*, 373 U.S. at 87, the Supreme Court held that "suppression by the prosecution of

evidence favorable to an accused upon request violates due process where the evidence is material

either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  A

---

[3]  Plaintiff foresees such intertwinement notwithstanding his first contention that, at present, little is known of what the *Monell* discovery will yield.  However, these positions are not in direct conflict.  On the one hand, Mr. Johnson is of the view that bifurcation of trial is not warranted because of the anticipated overlap in evidence with respect to the two sets of claims. Alternatively, he maintains that the Court can simply reserve judgment on the issue until more is known.

*Brady* violation occurs when a defendant can show that the evidence at issue (1) was favorable to the defendant, (2) material to the defense, and (3) the prosecution had the evidence but failed to disclose it. *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972); *United States v. Young*, 916 F.3d 368, 383 (4th Cir. 2019).

*Brady* extends to law enforcement officers; they have a duty to provide the prosecution with any material evidence that is favorable to a defendant. *See Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 846–47 (4th Cir. 1964); *see also Owens*, 767 F.3d at 396. And, *Brady* imposes this duty on any officer who has knowledge of the exculpatory or impeachment evidence. *See Owens*, 767 F.3d at 397-98; *Burgess*, 2017 WL 4947004, at *10. However, police officers "commit a constitutional violation only when they suppress exculpatory evidence in bad faith." *Gilliam*, 932 F.3d at 238; *see Owens*, 767 F.3d at 396 & n.6.

In the Memorandum Opinion, I concluded that plaintiff had stated *Brady* claims against the Officers. *See* ECF 45 at 42-45. Moreover, I noted that bad faith can be inferred based on gross deviations from routine police conduct. *See Mellen v. Winn*, 900 F.3d 1085, 1104 (9th Cir. 2018) (finding that because the officer defendant "had participated in hundreds of homicide investigations," a reasonable jury "could conclude that [the officer] knowingly suppressed the statements to secure a conviction"); *Jimenez v. City of Chicago*, 732 F.3d 710, 721-22 (7th Cir. 2013) (noting that errors in investigation "were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights"). Therefore, for plaintiff to prove his *Brady* claims against the Officers, he may endeavor to obtain discovery of BPD policies at the relevant time. And, those same policies could be relevant to the *Monell* claim.

As noted, to prevail on a *Monell* claim, a plaintiff bringing claims under § 1983 must "prove the existence of an official policy or custom that is fairly attributable to the municipality and that

12

proximately caused the deprivation of their rights." *Jordan*, 15 F.3d at 338.  Thus, evidence as to the *Brady* claim may implicate BPD policies and overlap with evidence pertinent to the *Monell* claim.  If the overlap is minimal, trying the *Brady* claims and the *Monell* claim separately may be more efficient.  If the overlap is significant, however, the opposite holds.  Both sides offer more by way of prediction and speculation than concrete assertions about the facts of this case.  At this juncture, it is simply too soon to say.

In their Reply, defendants insist that bifurcation of trial will nevertheless be more efficient, as illustrated by two "wrongful conviction-type cases" decided by judges in this District.  ECF 62 at 4.  They cite *Humbert v. O'Malley*, WDQ-11-0440, 2012 WL 1066478, at *2 (D. Md. Mar. 27, 2012), *rev'd on other grounds*, 866 F.3d 546 (4th Cir. 2017).  There, the District Court merely stated that bifurcation served judicial economy because the plaintiff's success on the *Monell* claim required a finding that the individual defendants violated the plaintiff's constitutional rights.  Of course, a meritorious *Monell* claim by definition generally requires proof that individual municipal employees violated a plaintiff's constitutional rights.  *See Young*, 238 F.3d at 579.  Thus, the citation to *Humbert* does not elucidate the question of whether bifurcating trial would serve judicial economy *in this case*.  Defendants also cite *Burgess*, 2016 WL 1159200, at *2.  But, it is simply inapposite, as the plaintiff there did not oppose bifurcation.

Plaintiff correctly asserts that "BPD can be liable for constitutional violations caused by its policies, practices, or customs, even when individual officers are afforded qualified immunity."  ECF 57 at 14.  To be sure, there are some narrow circumstances in which "a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality."  *Int'l Ground Transp., Inc. v. Mayor and City Council of Ocean City*, 475 F.3d 214, 219 (4th Cir. 2007).  One such situation is when the individual defendants are entitled to

qualified immunity. *Id.* However, to prevail on his *Monell* claim plaintiff still needs to prove that his constitutional rights were violated, regardless of whether the Officers are entitled to qualified immunity. *See Young*, 238 F.3d at 579.

In sum, given the posture of the case, I cannot yet determine whether bifurcation of trial is warranted. Therefore, I shall deny the Motion to Bifurcate, without prejudice to defendants' right at a later time to renew a request for bifurcation.

I turn to the defense request to stay *Monell* discovery. Defendants' argument in support of a stay of *Monell* discovery is not persuasive.

Defendants contend that *Monell* discovery should be stayed because it would be "burdensome" and entail significant costs "that are highly likely to be for naught." ECF 62 at 9. They seem certain that Mr. Johnson will not prevail as to his *Brady* claims and thus never proceed to trial against the BPD. That certainty belies the fundamental issue here—little is known about the evidence on which Mr. Johnson will rely, let alone the strength of his claims.

At this stage, it is important to consider the potential prejudice to both sides that will result from a stay of *Monell* discovery. As plaintiff notes, "the issues in this case are already 32 years old." ECF 57 at 22. The longer that discovery of the *Monell* claim is delayed, the risk grows that memories will fade and evidence may become stale. That will prejudice both plaintiff and defendants.[4]

---

[4] With respect to indemnification, Mr. Johnson asserts that the BPD has "not agreed" to indemnify the Officer Defendants, as it "routinely does" in similar cases. ECF 57 at 11. Accordingly, if plaintiff "is unable to collect on any verdict against the Officer Defendants, he would be required to litigate the *Monell* claim to secure a judgment against BPD itself." *Id.* In response, defendants assert that the "BPD has not taken a 'position' regarding indemnification." ECF 62 at 2. Further, they maintain that "[i]ndemnification is irrelevant to the threshold [*Monell*]

Accordingly, I shall allow *Monell* discovery to proceed. Discovery on the *Monell* claim is arguably necessary to establish the claims against the Officers.  And, armed with a fuller understanding of the facts, based on discovery, the defendants will be able to revisit the issue of bifurcation of trial, if they wish to do so.

### III.    Conclusion

For the foregoing reasons, I am of the view that the request for bifurcation of trial is premature.  And, allowing the *Monell* discovery to proceed will better serve judicial economy.. Therefore, I shall deny the Motion to Bifurcate (ECF 52), without prejudice, to the extent the Motion seeks a bifurcation of claims for trial.  And, I shall deny the Motion as to the request for a stay of *Monell* discovery.

An Order follows.

Date: November 16, 2020                                    _____/s/_____

                                                                          Ellen L. Hollander
                                                                          United States District Judge

---

issue" of whether the Officers violated plaintiff's constitutional rights.  *Id.* at 3.  At this juncture, I need not address the parties' disagreement about indemnification.