IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEROME JOHNSON, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: ELH-19-698 |
| BALTIMORE POLICE DEPARTMENT, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MEMORANDUM OPINION AND ORDER**

On April 13, 2021, plaintiff Jerome Johnson and individual defendants Kevin Davis, Frank Barlow, Daniel Boone, and Gerald Goldstein deposed Thomas Carroll, a detained, unrepresented, third-party witness to the 1988 murder of Aaron Taylor.  On April 29, 2021, the individual defendants notified me that, during the deposition, plaintiff's counsel objected to questions about the documents he reviewed with Mr. Carroll before his deposition and instructed the witness not to answer the questions.  ECF 99.  The individual defendants seek leave to reopen Mr. Carroll's deposition "for the limited purpose of determining what documents he reviewed," and they seek an order barring plaintiff "from instructing third party witnesses to not answer questions consistent with the Court's ruling at future depositions."  *Id.*  Plaintiff claims the documents his attorneys selected to show Mr. Carroll before his deposition reflect the mental impressions of counsel and are protected from disclosure by the work product doctrine.  ECF 100.

I reviewed the parties' filings, and I heard argument on a Zoom conference on May 3, 2021. After the conference, plaintiff's counsel submitted the documents at issue for *in camera* review.[1]

---

[1] The documents include photographs and an audio file, as well as written documents.

I also reviewed the transcript of Mr. Carroll's deposition.  I find plaintiff waived any work product protection that may have existed over the selection of documents when his counsel showed Mr. Carroll the documents in advance of his deposition.  I further find that Mr. Carroll reviewed the documents to refresh his recollection in preparation for his deposition, and it is in the interests of justice for defendants to ask about the documents Mr. Carroll reviewed.  Therefore, I will grant defendants' request.

**Discussion**

Whether the individual defendants may question Mr. Carroll about the documents he reviewed before his deposition involves both Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 612.  Rule 26(b) permits "discovery regarding . . . nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  Rule 26 also incorporates the work product doctrine, a qualified privilege, which provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless "they are otherwise discoverable under Rule 26(b)(1)" and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A).  Even on a showing of substantial need, however, the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

Rule 612 permits discovery, under certain circumstances, of documents used to refresh a witness's recollection before a deposition.  It states:

> [I]f a witness uses a writing to refresh memory for the purpose of testifying either—
> (1) while testifying, or (2) before testifying, if the court in its discretion determines
> it is necessary in the interests of justice, an adverse party is entitled to have the
> writing produced at the hearing, to inspect it, to cross-examine the witness thereon,

and to introduce in evidence those portions which relate to the testimony of the witness.

Fed. R. Evid. 612.

### A.      Work Product Doctrine

The first issue is whether the work product doctrine bars discovery of the compilation of the documents.[2]  This "qualified privilege" protects "certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'"  *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 173–74 (4th Cir. 2019), *as amended* (Oct. 31, 2019) (quoting *United States v. Nobles*, 422 U.S. 225, 237–38 (1975) (quoting *Hickman v. Taylor*, 329 U.S. 495, 508 (1947))). Pursuant to the work product doctrine, "an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation."  *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999) (quoting *In re Doe*, 662 F.2d 1073, 1077 (4th Cir. 1981)); *see* Fed. R. Civ. P. 26(b)(3).  The burden is on the party seeking the doctrine's protection to demonstrate that it applies.  *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011).

The law distinguishes between fact work product and opinion work product. Fact work product "is 'a transaction of the factual events involved,'" whereas opinion work product "'represents the actual thoughts and impressions of the attorney.'"  *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 174 (quoting *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) (internal quotation marks omitted)).  The Court may compel production of fact work product "in limited circumstances, where a party shows 'both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship.'"  *Id.* (quoting *In re Grand Jury Subpoena*, 870 F.3d at 316); *see* Fed. R. Civ. P. 26(b)(3)(A).  Opinion

---

[2] Plaintiff has not asserted work product protection over any of the documents individually.

work product is afforded far more protection than fact work product.  *See* Fed. R. Civ. P. 26(b)(3)(B).  It "'enjoys a nearly absolute immunity' and can be discovered by adverse parties 'only in very rare and extraordinary circumstances.'"  *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 174 (quoting *In re Grand Jury Subpoena*, 870 F.3d at 316).

A party may waive work product protection, but "mere disclosure to a third party" is not tantamount to waiver.  *Maxtena, Inc. v. Marks*, No. DKC-11-0945, 2014 WL 4384551, at \*24 (D. Md. Sept. 2, 2014).  For example, "[d]isclosure to a person with an interest common to that of the attorney or the client" generally will not result in waiver.  *Id*. (quoting *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981)); *see In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prod. Liab. Litig.*, No. 1:17-MD-2775, 2019 WL 2330863, at \*4, \*5 (D. Md. May 31, 2019) (quoting *In re Doe*, 662 F.2d at 1081, and concluding that defendant did not waive work product protection by sharing documents with a consultant it hired because "[t]here [was] no indication that [the consultant's] interests departed from Smith & Nephew's").  For waiver to occur, the attorney or client's actions "must be consistent with a conscious disregard of the advantage that is otherwise protected by the work product rule," such that "the attorney cannot reasonably expect to limit the future use of the otherwise protected material."  *Maxtena*, 2014 WL 4384551, at \*24 (quoting *In re Doe*, 662 F.2d at 1081).  That is, disclosure to a third party amounts to waiver if "it has substantially increased the opportunities for potential adversaries to obtain the information."  *Hempel v. Cydan Dev., Inc.*, No. PX-18-3404, 2020 WL 4933634, at \*6 (D. Md. Aug. 24, 2020) (quoting 8 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2024 (3d ed. 2020), and concluding there was no waiver where one of two third parties who received the documents was plaintiffs' "agent" and both were plaintiffs' "collaborators," such that the disclosures "did not

create a significant likelihood that an adversary or potential adversary would obtain the [work product protected documents]").

Waiver may happen in two ways.  First, "when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection." *Maxtena*, 2014 WL 4384551, at *24 (quoting *In re Doe*, 662 F.2d at 1081).  Second, "release of otherwise protected material without an intent to limit its future disposition might forfeit work product protection, regardless of the relationship between the attorney and the recipient of the material." *Id*. (quoting *In re Doe*, 662 F.2d at 1081).

Plaintiff insists his counsel's choice of documents to show Mr. Carroll reflects counsel's litigation strategy and mental impressions and is, therefore, shielded from discovery by the work product doctrine.  The case on which plaintiff relies, *In re Allen*, 106 F.3d 582 (4th Cir. 1997), is not on point.  In that case, attorney Barbara Allen sought protection from a subpoena duces tecum that was served on her.  She asserted opinion work product protection over certain documents and refused to produce the documents or answer questions about them.  *Id.* at 599.  The documents included her "selection and collection of certain . . . employment records" that Ms. Allen had requested specifically from her clients.  *Id.* at 607.  She had not disclosed those documents to a third party, had not used them to refresh anyone's recollection, and had not used them prepare anyone for a deposition.  Under those circumstances, the Fourth Circuit held that her compilation of the documents was protected from disclosure as opinion work product.  *Id.* at 608.  It reasoned that when the attorney "chose and arranged" the subset of employment records, her "choice and arrangement constitute[d] opinion work product because Allen's selection and compilation of

these particular documents reveal[ed] her thought processes and theories regarding this litigation." *Id.* But see *Nutramax Labs., Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458, 466, 467 (D. Md. 1998) (holding that "selection of otherwise discoverable documents by counsel falls closer to fact work product on the continuum than it does to core opinion work product" and that if documents that are not "pure" opinion work product "are assembled by counsel, and are put to a testimonial use in the litigation, then an implied limited waiver of the work product doctrine takes place, and the documents themselves, not their broad subject matter, are discoverable").

Unlike in *In re Allen*, plaintiff's counsel selected certain documents to show Mr. Carroll, an unrepresented non-party witness, before his deposition and actually shared the documents with him. The discussions between Mr. Carroll and plaintiff's counsel were not privileged.

Additionally, the disclosure of a document to a third-party witness to refresh the witness's memory prior to his or her deposition is inconsistent with "an intent to limit its future disposition." *See Maxtena*, 2014 WL 4384551, at *24. It should have come as no surprise to plaintiff that counsel for the individual defendants asked Mr. Carroll what he did to prepare for his deposition, including which documents he reviewed. Such questions about a witness's efforts to prepare for a deposition—especially those of a non-party, unrepresented witness—are commonplace. Moreover, because the Court, in its discretion, may order disclosure of documents used to refresh a witness's recollection before a deposition "for the purpose of testifying," plaintiff could not have reasonably expected that documents shared with a non-party, unrepresented witness to aid his recollection during a deposition would not be disclosed. *See* Fed. R. Evid. 612. Therefore, he did not act consistently with an intent to limit the future disclosure of the documents.

*S.E.C. v. Gupta*, 281 F.R.D. 169 (S.D.N.Y. 2012), a case from the Southern District of New York, is instructive. In that action, the parties deposed third-party Lloyd Blankfein, and defendant

Gupta's counsel asked him about his preparation for the deposition. *Gupta*, 281 F.R.D. at 170.

Mr. Blankfein stated that he had meet with plaintiff's counsel as well as attorneys from the U.S.

Attorney's Office.  SEC counsel objected on work product grounds to defense counsel's follow-

up questions about what documents the witness was shown. *Id.* at 170–71.  The court observed

that defense counsel's "questions were plainly directed at witness credibility." *Id.* at 173.  It

concluded that any work product protection had been waived because "[t]he SEC and the USAO

chose to meet with Blankfein in the days and weeks before his deposition and go over his

testimony," when "[t]hey were under no obligation to do so," and their "'deliberate, affirmative,

and selective' use of work product waives the SEC's ability to now assert the privilege against the

defendants." *Id.* at 172 (citation omitted).  Waiver extended to counsel's "legal strategy in their

questioning when they posed those questions to Blankfein to prepare him for his deposition," and

also "any selection and compilation privilege over which documents they believed were important

when they showed those documents to Blankfein during their prep sessions." *Id.* at 173.  The court

reasoned:

> The ability of a party to meet with a non-party witness, show him documents and
> ask him questions, and then mask the entire preparation session in the cloak of work
> product protection would serve to facilitate even the most blatant coaching of a
> witness if it could not be the subject of inquiry. To allow the invocation of work
> product protection to succeed in such circumstances would leave the party taking a
> deposition with no remedy to determine how, if at all, a witness's testimony was
> influenced, not by advice from the witness's own counsel, but by suggestions from
> the questioner's adversary, who, especially if possessing governmental power, was
> in a position to unfairly pressure the witness. . . . By asking Blankfein what topics
> he recalls were discussed, what questions he was asked and what documents he was
> shown, defendants seek to discover how the preparation sessions affected
> Blankfein's testimony, and do not demonstrate a mere naked attempt to obtain the
> SEC's and the USAO's legal opinions and strategy.

*Id.*

The facts before me are similar to the facts in *Gupta*.  Plaintiff's counsel chose to meet

with Mr. Carroll two months before his deposition and, then again, one day before his deposition.

Counsel selected a subset of documents to share with Mr. Carroll on both occasions.  During the deposition, defense counsel asked about the documents Mr. Carroll reviewed, and Mr. Carroll stated he had reviewed documents and photographs related to the murder before his deposition. Carroll Dep. 97:3–7, 98:11–17, 103:13–16.  This was an appropriate line of inquiry, not designed to obtain plaintiff's legal opinions or strategy.   Rather, defense counsel was attempting to probe into Mr. Carroll's memory of the events from 30 years ago and to what extent it was based on his recollection or his recent review of documents and photographs.  As in *Gupta*, work product protection should not shield defense counsel from discovery of any influence plaintiff's counsel may have had on the witness when counsel and the witness met before the deposition.  *See Gupta*, 281 F.R.D. at 173.  Under the facts of this case, when plaintiff's counsel showed Mr. Carroll documents in advance of his deposition, plaintiff waived any opinion work product protection it might have had over the compilation of the documents.  *See In re Doe*, 662 F.2d at 1081; *Maxtena*, 2014 WL 4384551, at *24; *Gupta*, 281 F.R.D. at 172–73.  The materials shown to the witness before his deposition should be disclosed to the individual defendants.

### B.      Federal Rule of Evidence 612

The second issue is whether defendants' counsel may inquire about these nonprivileged documents pursuant to Rule 612.  To resolve this issue, the Court must determine (1) whether Mr. Carroll used the documents to refresh his recollection, (2) "for the purpose of testifying" at his deposition, and (3) whether, "in the interest of justice, the adverse party is entitled to see the [documents]."  *Nutramax Labs., Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458, 466, 468 (D. Md. 1998); *see Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 242 (D. Md. 2010) (quoting *Nutramax*); *Weintraub v. Mental Health Auth. of St. Mary's, Inc.*, No. DKC-08-2669, 2010 WL 347882, at *7 (D. Md. Jan. 22, 2010) (stating elements from *Nutramax* and noting the belief that

a document is discoverable "simply because the document was reviewed by [the witness] in preparation for her deposition" is "a gross oversimplification of the relevant considerations"). The first two elements ensure that the documents are relevant to the witness's testimony and that they "may fairly be said in part to have an impact upon the testimony of the witness." *Nutramax*, 183 F.R.D. at 468 (quoting *Sporck v. Peil*, 759 F.2d 312, 317–18 (3d Cir.1985)); *Coryn Grp.*, 265 F.R.D. at 242 (quoting *Nutramax*).

Whether plaintiff's counsel disclosed the documents to Mr. Carroll to refresh his memory for purposes of testifying at his deposition, as well as whether any disclosure affected the witness's testimony, may be established "by direct proof (an admission by the deponent that review of documents aided memory) or circumstantial proof, from which an inference may be drawn whether such assistance was received." *Nutramax*, 183 F.R.D. at 473. The Court "has significant discretion" in determining whether reviewing the documents affected the witness's testimony and "'need not accept at face value the witness's claim that reviewing [a document] revived the witness's memory.'" *Coryn Grp.*, 265 F.R.D. at 242–43 (quoting 1 McCormick on Evid. § 9).

Mr. Carroll testified that he met with plaintiff's counsel and reviewed documents and photographs relating to the murder. Carroll Dep. 97:3–7, 98:11–17, 103:13–16. Defense counsel was unable to inquire whether the documents refreshed his recollection because plaintiff's counsel objected to the questioning and instructed the witness not to identify the documents he reviewed. Even without Mr. Carroll's testimony, "the Court may . . . determine whether the documents were used [to refresh recollection] through an *in camera* review of the documents and the deposition transcript." *Id.* at 243. In this regard, *Nutramax*, 183 F.R.D. 458, a nonbinding decision, is instructive and useful. In *Nutramax*, despite the corporate designee's testimony that he had not reviewed documents from a given timeframe, the Court considered the documents the witness had

reviewed, read his deposition testimony, and concluded "there [was] no question . . . that he did review documents in preparation for his deposition, and that this review unavoidably enhanced his recollection of events which took place more than five years earlier."  183 F.R.D. at 473.  With regard to another deponent, the Court considered the documents the witness had reviewed and denied discovery of them because "it [was] understandable why he denied that they assisted in his recollection of the events [at issue]."  *Id.* at 474.  The Court noted that, even if the documents had refreshed the witness's recollection, "there [was] no enhanced need to learn whether his testimony [was] derived from sources other than his personal recollection, as his testimony at trial [would] be restricted to facts of which he ha[d] personal knowledge."  *Id.*

Here, Mr. Carroll was a witness to events that occurred 30 years ago, and he was Mr. Johnson's co-defendant at trial.  At the deposition, defense counsel questioned Mr. Carroll extensively about his memory of Mr. Taylor's murder and other events that occurred in 1988.  The documents, photographs, and audio file shared with Mr. Carroll before his deposition relate to the murder and the subsequent investigation and prosecution.  After a review the deposition transcript and the materials shown the deponent, I am convinced that plaintiff's counsel shared the documents with Mr. Carroll to refresh his recollection and the documents "unavoidably enhanced his recollection of events which took place more than [30] years earlier."  *See Nutramax*, 183 F.R.D. at 473.

As for the third element, to "determine that, in the interest of justice, the adverse party is entitled to see the writing," the Court considers:

(1) The status of the witness. . . .

(2) The nature of the issue in dispute. . . .

(3) When the events took place. . . .

(4) When the documents were reviewed.  . . .

(5) The number of documents reviewed. . . .

(6) Whether the witness prepared the document(s) reviewed. . . .

(7) Whether the documents reviewed contain, in whole or part, "pure" attorney work product, such as discussion of case strategy, theories or mental impressions, which would require redaction or favor nondisclosure. . . .

(8) Whether the documents reviewed previously have been disclosed to the party taking the deposition, as part of a Fed. R. Civ. P. 34 document production, or otherwise.

*Nutramax*, 183 F.R.D. at 468, 469–70.

Nearly every *Nutramax* factor cuts in favor of disclosure.  Mr. Carroll is a fact witness who testified about a 1988 murder, the events leading up to it, and the subsequent investigation.  Carroll Dep. 54:6 – 92:14.  Specifically, he testified that Mr. Johnson was not at the scene when the murder occurred.  *See id.*  Plaintiff alleges that the key eyewitness, L.S., did not inform the police initially that plaintiff was involved in the murder but only implicated him in a later statement, and he claims the individual defendants violated his due process rights by withholding and fabricating evidence.  Compl. ¶¶ 6–7, 23–49, & 183.  Mr. Carroll's testimony relates directly to these allegations.  Two months, and then one day, before his deposition, Mr. Carroll reviewed the documents.  In total, he reviewed three documents, several photographs, and one audio file.  None contains attorney work product, and plaintiff waived any work product that may have protected the compilation of the documents.   The audio file and two documents were obtained through discovery, and the photographs were obtained through plaintiff's independent investigation.   Plaintiff's counsel introduced two of the documents as exhibits during the deposition.  Balancing these factors, I find that it is in the interests of justice for the individual defendants to see the documents Mr. Carroll reviewed before his deposition and to ask him about them.  *See* Fed. R. Evid. 612.

## ORDER

For the reasons stated in this memorandum opinion, it is, this <u>18th</u> day of <u>May</u>, <u>2021</u>, hereby ORDERED that

1.  The individual defendants' request to reopen Mr. Carroll's deposition for defense counsel to see the materials plaintiff's counsel reviewed with Mr. Carroll and ask the witness about them, ECF 99, IS GRANTED; and

2.  This Order shall guide counsel in future depositions where the witnesses reviewed documents before testifying.


                                    _____/S/_____
                                    Deborah L. Boardman
                                    United States Magistrate Judge