**NATHAN & KAMIONSKI LLP**

August 25, 2021

**VIA CM/ECF**
Hon. Deborah L. Boardman
United States District Court
101 West Lombard Street, 3C
Baltimore, Maryland 21201

    Re: *Jerome Johnson v. BPD. et al.*, Civil Action No. ELH-19-0698.

Dear Judge Boardman:

  Defendants Kevin Davis, Frank Barlow, Daniel Boone, and Gerald Goldstein ("Individual Defendants") write in support of their subpoena to Attorney Nancy Forster for her deposition scheduled to take place on August 27, 2021. Deposition Subpoena for Nancy Forster, attached as Exhibit 1. Ms. Forster agreed to accept service of the subpoena by email.[1] In a letter dated August 17, 2021, Ms. Forster stated that she could not agree to sit for the deposition without further clarification because, "I cannot think of any non-privileged knowledge I have that is relevant to the claims and defenses in this case." Letter of Nancy Forster Dated August 27, 2021, attached as Exhibit 2. Individual Defendants responded to Ms. Forster's letter and explained that they intend to question Ms. Forster regarding non-privileged matters including:

> [T]he custody of your file and the documents contained in it for purposes of Plaintiff's *Brady* claim. We also intend to ask you about the documents disclosed from your file along with the timeline and factual circumstances of the various investigative events reflected in your file.

Ind. Defs.' Letter to Nancy Forster Dated April 23, 2021, attached as Exhibit 3.[2]

### Ms. Forster Involvement In the Criminal Case & Allegations She Made

  Ms. Forster was Plaintiff's post-conviction counsel from at least August 6, 2013 until his criminal charges were dismissed on July 2, 2018. *See* NK DEF 003210, attached as Exhibit 4.[3] Ms. Forster's first appellate filings on behalf of Plaintiff surround an allegation that a police report from July 14, 1988 by Officer Jones ("Jones Report") was never disclosed to Plaintiff. *See* Pet. for Writ of Cert. filed July 30, 2014, attached as Exhibit 5.[4] The Jones Report remained a key part of Ms. Forster's argument within the Joint Petition for Writ of Actual Innocence ("Joint Petition"), the filing that led to Plaintiff's release from prison. It states:

---

[1] Ms. Foster stated in her email "I do not believe, as Mr. Johnson's exoneration counsel, that I can be deposed and this will be a matter of litigation." *See* Ex. 1 at p.4.
[2] Individual Defendants received Ms. Foster's August 17, 2021 letter on August 20, 2021.
[3] Ms. Forster was counsel of record in this case as well. Her Motion to Withdraw Appearance was granted on June 2, 2021. ECF No. 108.
[4] Plaintiff's appellate brief filed in the Court of Special Appeals by Ms. Forster that was denied preceding this Petition for Writ of Certiorari has not been produced.

> Most significantly, an undisclosed Police Report drafted by Officer Jones indicates that the differences between LS's first statement, taken by Officer Jones within 40 minutes of the shooting, and her subsequent statements, were even more profound than the internal inconsistencies in her trial and grand jury testimonies.

Joint Pet. for Writ of Actual Innocence, p.9, attached as Exhibit 6. The allegations involving the withholding of the Jones Report remain prevalent in Plaintiff's Amended Complaint. *See* Pl.'s Am. Compl., ECF No. 116, ¶¶ 9, 48, 52, 85, 94, 96. Individual Defendants intend to ask Ms. Forster regarding the non-privileged factual basis for the *Brady* allegations asserted in her filings.

### Ms. Forster's Presentation to the SAO

Ms. Forster was also involved on the ground level with presenting facts to the SAO and convincing them to "reinvestigate" Plaintiff's case. She made a presentation to the SAO in this regard in August 2017. Ex 6. p.13. Lauren Lipscomb, chief of the CIU, stated at her deposition that the CIU dispensed with the usual, initial review process because Ms. Forster asked the CIU to investigate the case. ASA Lipscomb testified, "In the Jerome Johnson case, it was a case that was presented by Nancy Forster, and based on her presentation, it was a case that needed an investigation. So, the initial review process was almost none." Excerpt of Deposition Transcript for Lipscomb 6/28/2021, p.32, attached as Exhibit 7. Given that Plaintiff will attempt to argue in this case that he is innocent because the SAO decided to vacate his conviction, the documents and arguments that Ms. Forster presented to the SAO are directly relevant to Plaintiff's claims.

The importance to Individual Defendants of identifying the evidence Ms. Forster presented to the SAO is magnified by the fact that evidence gathered to date proves that it is likely that two false affidavits—affidavits from Paul Burton and Alvin Hill—were presented to the SAO. Plaintiff presented a number of false affidavits in his first Petition for Writ of Innocence in April 2011. *See* JOHNSON_ 001139-63, attached as Ex. 8. One affidavit, allegedly signed by Paul Burton, claimed that Burton, and not Plaintiff, was the individual who handed a gun to the shooter, Alvin Hill, and that Plaintiff was not present at the murder. *Id*. at JOHNSON_ 001158-60. Discovery in this case established that Burton's affidavit is false, and Plaintiff now claims he is no longer relying on it.[5] Another affidavit, signed by Alvin Hill, the convicted shooter in the murder, also claimed that Paul Burton handed him a gun and that Plaintiff was not present at the murder. *Id*. at JOHNSON_ 001155-57. Although Plaintiff's petition was denied, the Court of Special Appeals remanded Plaintiff's petition for an evidentiary hearing. With this remand pending, Plaintiff, via Ms. Forster, withdrew his petition on December 6, 2016. *See* NK Def 00365-00366, attached as Exhibit 9.[6] The SAO then joined Ms. Forster and the Mid Atlantic Innocence Project in filing the Joint Petition on July 2, 2018. Ex. 6. Notably, the Joint Petition dropped all references to the Burton affidavit while adopting and relying on the Alvin Hill affidavit which claimed that Burton, and not Johnson, handed a gun to the shooter. Ex. 6 at pp.12, 15.

---

[5] Paul Burton's prison records demonstrate that he was incarcerated at Maryland Correctional Institute - Hagerstown on July 14, 1988, the day of the murder. *See* NK DEF 012676, attached as Exhibit 12. Additionally, Mr. Burton testified at his deposition in this case that he was in prison on July 14, 1988 and that he never signed the affidavit Plaintiff sought to attribute to him. *See* Excerpt of Deposition Transcript for Paul Burton 1/20/2021, p.190, attached as Exhibit 13.

[6] A document that was possibly drafted by Ms. Forster indicates that she withdrew the Petition with the understanding that the SAO had already begun a reinvestigation of Mr. Johnson. *See* SAO_PC_Johnson 002766-002788 WAI_-_MOL_Jerome_Johnson, attached as Ex. 14, at p.23.

2

Further investigation has revealed additional questions about Ms. Forster's presentation to the SAO. Mr. Burton testified at his deposition in this case that he met with Ms. Forster in December 2015 or 2016.[7] When asked if he told Ms. Forster that the affidavit was false, Mr. Burton invoked his fifth amendment privilege. Excerpt of Deposition Transcript for Paul Burton January 20, 2021, pp.332-33, attached as Ex. 10. In fact, six months before Ms. Forster withdrew Plaintiff's Petition for Writ of Actual Innocence, Plaintiff was recorded discussing the affidavits on a jail call. On June 6, 2016, Plaintiff stated:

> Matter of fact, remember on the remand there's three affidavits can you recall that? OK, I don't want to say the names cuz I don't want to give too much information over the phone but, one of the key people is supposed to be jumping ship. But we still gonna be able, she's saying she's still gonna be able to use his affidavit, in other words the dude's not coming to testify. But she don't think it's real damaging, but it's a little bit. But we still may get it in cuz we still got Poopie.[8]

Excerpt of Deposition Transcript for Jerome Johnson 7/22/2021, p.395-97, attached as Exhibit 11. This jail call, confirmed accurate by Plaintiff at his deposition on July 22, 2021, raises legitimate questions regarding why the Alvin Hill affidavit was then relied upon in the Joint Petition subsequently filed. Whether Nancy Forster's presentation to the SAO included documents such as the false affidavits of Burton and Hill is thus directly relevant to Plaintiff's claim of innocence and solely within her knowledge.

**Legal Support**

Courts have held that the "Federal Rules of Civil Procedure do not prevent the deposition of another party's lawyer, so long as the deposition seeks relevant, nonprivileged information." *Carr v. Double T Diner*, 272 F.R.D. 431, 435 (D. Md. 2010); Fed. R. Civ. P. 26(b)(3) and 30(a)). In *Carr*, the court allowed the deposition of a party's former attorney to take place so long as the attorney was treated as a fact witness and "provided the deposition steers safely clear of privileged information . . . Once the deposition commences, Defendants may object to any question they believe in good faith implicates privileged information." *Carr,* 272 F.R.D. at 435.

Ms. Forster has relied on *Cincinatti Ins. Co. v. Fish*, No. CV RDB-19-3355, 2021 WL 1658469 (D. Md. Apr. 27, 2021) and *476 K St., LLC v. Seneca Specialty Ins. Co*., No. CIV. TDC 14-2739, 2015 WL 3464459, at *1 (D. MD. May 28, 2015) to avoid her deposition but these cases involving insurance claims provide her no cover. In *Cincinnati Ins. Co.*, the court required that a defendant seeking to depose a plaintiff's attorney should establish that "1) the deposition is the only practical means of obtaining the information; 2) the information will not invade the attorney-client privilege or the attorney's work product; and 3) the information is relevant and its need outweighs the disadvantages of deposing a party's attorney." *Cincinnati Ins. Co.,* 2021 WL 1658469 at *1 (citing *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc*., 117 F.R.D. 83, 85-86 (M.D.N.C. 1987)). Here, the custody and makeup of Ms. Forster's post-conviction file and the

---

[7] Mr. Burton's prison calls reflect that Mr. Burton met with Ms. Forster in December 2015 and that he believed that Ms. Forster had agreed to enter her appearance on his recent pro-se filing. The prison calls reflect that Ms. Forster visited Mr. Burton again on June 17, 2016. In fact, Ms. Forster entered her appearance on behalf of Mr. Burton in his unrelated criminal case on August 3, 2017, shortly before her presentation to the SAO. *See State of Maryland vs Paul Antonio Burton*, Case No. 03-K-93-001699

[8] "Poopie" is the nickname for Alvin Hill. Excerpt of Deposition of Jerome Johnson, July 22, 2021, p.214, attached as Exhibit 15

3

documents contained in it are directly relevant to Plaintiff's *Brady* and fabrication claims. To the extent the questioning of Ms. Forster bears on the *Brady* and fabrication claims, any privilege was waived when Plaintiff placed these matters in issue. In any event, questions regarding the documents disclosed from this file along with the timeline and factual circumstances of various investigative events reflected in Ms. Forster's file do not invade attorney-client privilege or work product. As this line of questioning could only be answered by Ms. Forster, Ms. Forster's deposition is appropriate. *See 476 K St., LLC*, 2015 WL 3464459 (stating that an opposing party's attorney may be permitted when the information sought is not available from another source).

        For the foregoing reasons, Individual Defendants respectfully request that the Court order Ms. Forster to comply with her deposition subpoena.

Respectfully submitted,

   */s/*
Shneur Z. Nathan (20707)

cc:    All counsel of record via CM/ECF