# EXHIBIT 1



**Office of the State's Attorney for Baltimore City**
**120 East Baltimore Street**
**Baltimore, MD 21202**

**MEMORANDUM**

**ATTORNEY WORK PRODUCT**
**PRIVELEGED**

To:         **Marilyn J. Mosby, State's Attorney for Baltimore City**

From:       **Lauren Lipscomb, Division Chief, Conviction Integrity Unit**

DATE:       **June 1, 2018**

RE:         **State v. Jerome Johnson, Case Number 18631504**
            **Re-Investigation and Recommendation**

---

<u>RECOMMENDATION</u>

It is my opinion that Johnson was not present and did not participate in this murder. Based on the re-investigation conducted and results as highlighted below, it is my recommendation that we agree to a joint petition for writ of actual innocence and not seek to re-try the case.

<u>BRIEF SYNOPSIS</u>

**Question Presented: Was the Johnson present; if so, did he hand the gun to the Shooter who then used same to kill the Victim?**

Following our re-investigation which began in August of 2017, there is overwhelming evidence that the Johnson was not present during the murder and was not involved in it. Therefore, the Johnson did not hand a gun to the Shooter.

SAO_PC_Johnson 001321

**State's Evidence**

State's case as to Jerome Johnson rested on:

1)  Uncorroborated testimony of Lekisha Snead that Johnson handed the Shooter the gun used to murder the Victim.

    a)  Snead's **version changed multiple times** after she gave her initial statement

    b)  Snead's initial version and the one she remembers clearly as of 5/16/18 is the same

    c)  There was **no pretrial identification procedure** done with Snead as to Johnson and no confirmatory procedure – as evidenced by her conflicting statements thereafter in which she tends to be vague and mixes up the roles of people

    d)  Johnson was alongside Shooter at trial who was dead up

2)  Kenneth Allen's testified at trial and said Johnson was present though he did not say he participated

    a)  Allen's statement changed from his initial interview in which Johnson was not present

**New Evidence and Information**

We now have the benefit of multiple independent witnesses who corroborate that Johnson was not present and that he was at Lucille and Reisterstown Rd:

1)  Alvin Morgan – he was with Johnson and neither of them were present at the murder;

2)  Tanya Lazenby – was with Snead that night and Johnson was not present during shooting;

3)  Tommy Carroll – co-Defendant, blurted in a jail call that Johnson was not there in April 2018, stated to us that Johnson was not there, has not spoken to Johnson since the 90s, never interviewed by BPD or SAO and had no idea what we were there to talk about at ECI besides it being about the 1988 murder;

SAO_PC_Johnson 001322

4) Reginald Dorsey – co-Defendant, told investigators at PSI that Johnson was not there, then told us same thing, never interviewed by BPD or SAO, has not spoken to Johnson since 1990s;

5) Alvin Morgan – was with Johnson at time of shooting;

6) Alvin Hill, by affidavit – co-defendant, deceased.  He prepared an affidavit in 2000 that he killed Victim and Johnson was not there;

7) PO Steve Owens – multiple reports from independent people that he was there and spoke to Johnson immediately after the murder;

8) Deborah McFadden – testified at a PC hearing that she saw Alvin Morgan and Johnson across the street when shots rang out; and

9) Lekisha Snead – says only 1 gun/Shooter, she does not mention anything about a gun misfiring or a gun handoff.  Her statement from May 2018 matches her initial interview with police 30 minutes after the murder.

We believe that Snead told the truth during the initial interview and remembers the same facts now because they are the truth.  We believe that Snead was heavily influenced by the family's desire to locate suspects in being helpful to police.  For example, Donald Parker, Victim's brother was told by police to stay out of it.  He did not and he tells people he's looking for Dorsey because he was present when his brother was killed.  Once police had some names, it appears the investigation became narrowed at the expense of probably charging another individual, Orni Carroll, as opposed to Johnson.

**Victim's Family**

We have met with Ms. Gwendolyn Taylor, Victim's mother and Donald Parker, Victim's brother.  Each understands that this case is being re-investigated and may result in an exoneration.  They are ok with whatever the outcome may be.  Donald, in particular, thinks we should "let them all go".  As an aside, the Shooter died a few years back.

3

## FACTUAL SUMMARY

On July 14, 1988, at approximately 1:15am, Victim Aaron Taylor (31 years old and hereinafter referred to as "Victim") left the area of Virginia Avenue and traveled to the Night Owl Bar located at 3602 Woodland Avenue.  Once in front of the location, Victim was approached by several men and the shooter (later identified as Alvin Hill, aka Poopie, and hereinafter referred to as "Shooter").  An argument ensued.  Victim fled from the group to the inside of the Night Owl Bar.  Victim grabbed a patron (later identified as Marvin Reid and hereinafter referred to as "Shield") and used this patron as a human shield, hiding behind same from the Shooter.  The Shooter yelled multiple times for the Shield to "duck".  Victim screamed "don't shoot".  During this, store owner Jung Kim (hereinafter referred to as "Owner") called 911.  After moments went by with the Shield struggling to break free and Victim clutching on to him, the Shield and Victim fell to the ground.  Shooter approached and fired multiple shots down into Victim.  Victim tried crawling toward the doorway and collapsed.  The Shield's foot was struck by a bullet.  The Shooter and the guys from outside all fled.  The Shield remained until police arrived.  EMTs arrived and Victim was pronounced dead at the scene.  Victim's family responded.  Victim's mother identified Victim.

## INITIAL INVESTIGATION

Detective Kevin Davis was primary, BPD CID.  Detective Davis responded to the scene and was on scene by 1:45am.  Victim was in a crawling position facing doorway and was pronounced dead at scene having been shot in the back of the head multiple times.  Crime Lab responded and Tech Stewart processed the scene – took pictures, dusted for latents, recovered fragments and sketched the scene.  PO Mays and Jones were first responding.

PO Mays was present when Medic 11 arrived and CRT Britcher pronounced the Victim at 1:22am.  PO Mays was present when Victim's mother, Gwendolyn Taylor arrived and ID'D her son.  Other family members were with Ms. Taylor and ID'D

SAO_PC_Johnson 001324

Victim.  The Victim had no ID or any personal belongings on him.  PO Mays also spoke to Witness Juandre Mims who witnessed the shooting.

Following the murder @1:50am, while on the scene, PO Kenneth Jones interviewed a witness, Lekisha, aka Kita, Snead, (15 years old).  Ms. Snead is a cousin of the Victim.  She stated she knew the Shooter from the area, not by name.  She stated the Shooter came into the bar, pulled a HG from his waistband and held it down to the floor.  She saw Victim grab the Shield and heard Victim state "don't go nowhere, he's going to shoot me!".  She observed the Shield free and fall to the ground.  Then, the Shooter said, "I'm going to kill you" twice.  Snead then ran from the bar and heard 5 shots.  She said there were 3 males with Shooter, those 3 fled as well.  She indicated she knew the names of 2 of the 3 men with the Shooter, but did not want to say because she was scared.  She did not know Shooter's name but recognized him from the area.  *(It does not appear that this offense report was disclosed to Defense)*

PO Steve Owens wrote an offense report at 4:26am the night of the murder.  He advised as follows.  July 14, 1988 @ 1:10am, he (pass) and PO McDonald (driver) were in plainclothes in an unmarked car in the 3500 block of Woodland Ave.  He observed a crowd of about 8-10 people running north on Reisterstown Road.  POs made a right onto Reisterstown Road.  2 people observed the PO and began running faster.  PO Owens exited the vehicle @corner of Lucille/Reisterstown and chased the 2 individuals (one wearing a black sweatsuit and the other wearing white tee shirt and long white pants).  The individuals led PO Owens into the alley, behind 3610 Lucille, then they ran into Lucille and turned off all the lights.  6A10 and 6A09 responded and spoke to Donzella Carter who gave permission to search the house.  11 officers including K-9 and PO McDonald searched the house.  In the house were Terrance Carter, James Waites, Shagena Carter and Corey Carter arrived during the search.  A witness was brought to the house to do a show up – negative results *[there is no information in BPD or SAO file as to the identity of this witness]*.

At 2:00am, PO Mays spoke to:

1) Juandre Mims: he was in the Night Owl Bar and saw Victim being assaulted by the Shooter with a HG.  Then, he saw Shooter fire several shots at Victim.

2) Marvin Reid (Shield): he observed Victim being shot several times by Shooter

5

3) Jung Kim (Owner): She saw Shooter with a HG and she called 911.  While she was calling 911, Shooter moved into the bar area, fired 1 shot then fired several more shots at Victim who had fallen to the floor.  Shooter then fled the bar.

On July 14, 1988, at 3:20am, Detective Davis spoke to Juandre Mims on the phone who stated as follows.  He was a witness to the shooting.  He drove up to the bar and observed some people on the basketball court next to the bar.  He heard a shot, then saw group run into the bar.  He saw Shooter armed with  a .38 caliber revolver.  Then, heard 6-8 shots.  Shooter ran to Mims and asked Mims to drive him away, Mims refused.  Shooter was wearing black hoody and red shorts.  Mims recognized Shooter from the area.

On July 14, 1988, at 5pm, BPD received an anonymous call stating that Poopie [Alvin Hill, aka Poopie, referred to throughout as Shooter] is the Shooter and he sells drugs out of Lucille and Reisterstown.

July 14, 1988, synopsis of incident and preliminary investigation given in memo form from Det Davis to Cpt MacGillivary.  Report mentions incident, Victim, Crime Scene, PO Mays's report, PO Jones's report, Jung Kim, Marvin Reid, Lekisha Snead, Suspect UNK, and weapon described.  Follow up to be done was an interview of Snead and Mims.

On July 15, 1988, at 12:30 am, Det Davis responded to the Victim's home and spoke with Ms. Taylor (Victim's mother) and several other family members.  The family indicated that they had been in contacted with Lekisha Snead and she said Poopie was the Shooter.  The family told Det that another possible witness/suspect was Lamont.  The family said they heard that Lamont was in the bar at the time and told Poopie to shoot Victim in the head.  Det Davis noted that the car Lamont was driving was last seen in the area of the shooting on 7/14/88.

On July 15, 1988, at 2: 15am, BPD spoke to Shanay Snead, per handwritten notes, and served her with a summons.

On July 19, 1988, Snead was brought to the SAO by her mother, Dezzeries Snead.  At the SAO with Det Davis, Snead advised as follows.  She witnessed the shooting.  She was with Victim the night of the shooting at her house located at 3443 Virginia Ave.

6

SAO_PC_Johnson 001326

Victim left her house and headed for the Night Owl to get some chips.  Snead also left her house right after Victim to go to the Night Owl bar.  She arrived in the area of the Night Owl bar and saw Victim at the entrance to the basketball court, which is next to eh Night Owl bar.  She saw her cousin fussing with about 5 males.  She knew all the males except for 1.  Still happening outside the bar, she said she saw Lamont hand Poopie a small HG.  Poopie tried to shoot Victim, HG misfired.  Victim ran into the bar.  Snead ran into the bar behind victim.  She saw Victim grab Shield.  All 5 suspects ran to the front of the store.  She heard 1 tell Poopie to hit the Victim with the gun.  She heard a suspect known to her as Reginald Dorsey, aka Buttons, say "shoot him in the head, he can identify us."  The Shield broke free.  Shooter shot once.  Snead ran out.  Shooter shot more shots, then ran behind her across Reisterstown Rd.  She did not see where the other men ran.  She described the suspects as being Shooter (Alvin Hill aka Poopie), Lamont (gave gun to Shooter which misfired), Tommy (lives on same street as Lamont), Buttons (Reginald Dorsey, aka Buttons) said "shoot him in the head".  Snead was shown a picture of Tommy which was taken on 7/12/88.  She identified the photo as being Tommy.

On July 23, 1988, handwritten notes – BPD spoke with Donzella Carroll and told her to produce Tommy.  She said she would.  Then she called back and said her lawyer, Leonard Levine, advised against it.

On July 28, 1988, at 2:20pm, Reginald Dorsey was arrested and interviewed.  The interview concluded at 3:58pm.  He gave background on the incident.  He advised that he, Tommy and the Victim were present on the street when one of the Jamaicans came and gave Victim $300 for some cocaine.  Victim took money and left.  Later, the Jamaican returned to Tommy's house (3610 Lucille Ave) and threatened his family.  Tommy went to Dorsey's house and threatened Dorsey.  Then, Tommy went to Shooter's house at 3605 Lucille.  A few days passed and Dorsey saw the Jamaican who advised that Shooter had paid the $300 debt.  Shooter paid it because Shooter and Tommy are cousins.  The night of murder, Kenny Allen came to Dorsey's house and said he saw Victim.  Kenny and Dorsey went to Shooter's house and advised that Victim had been spotted.  Kenny and Dorsey found Victim at basketball court trying to buy cocaine.  They told Victim that Shooter and Tommy wanted their money back.  Victim said, "fuck them" and walked away.  Tommy walked away and Victim told Shooter he had given the money to

7

Tommy.  Tommy came back and said that did not happen.  Argument ensued.  Unknown
male pulled an automatic HG and pointed it at Victim.  The gun didn't fire.  Shooter told
UNK to give Tommy the gun, Tommy refused.  Victim ran into the bar.  Shooter ran into
the bar. UNK ran into the bar also.  Dorsey went to the front door and saw Shooter hit
Victim with gun.  Shots fired, everyone ran.  Dorsey ran across Reisterstown Rd.
Tommy, Shooter and UNK were behind him running.  Dorsey saw an unmarked PO's
car.  Saw PO known to him as Steve chasing Tommy and UNK into alley.  UNK was
wearing an all black sweatsuit.

> Q: What is Poopie's buddy (UNK) look like?
>
> A: B/M/early 20s, 5'11-6', light brown skin, wearing all black sweatsuit
>
> …
>
> Q: Who is Lamont?
>
> A: Poopie's buddy.  He was staying at 3605 Lucille Ave.
>
> Q: What kind of gun did Poopie have in the bar?
>
> A: long barrel, blue steel .38 revolver
>
> Q: Who is Kenny?
>
> A: He lives across the alley from me…last name Allen. He is about 20 years old.
>
> …
>
> Q: What did you do when Poopie's buddy pulled out the automatic and pointed it
> at [Victim]?
>
> A: I pushed [Victim] off of me.  He had grabbed onto me when the guy pulled out
> the automatic.  [Victim] then ran into the bar.
>
> …
>
> Q: What were you wearing that night?
>
> A: All white, white shorts.

On 7/28/88, at 10am, Lekisha Snead was taken before the grand jury by ASA
Michael Glushakow.  She testified that she headed to the Night Owl Bar with her
mother's friend and her girlfriend.  When she got there, Victim was "standing there with
five people, five males.  And when [she] was going in the store, Lamont [Johnson] gave
Poop [Shooter] a gun."  Victim ran in the store.  Poop came in and was firing at Victim.

8

SAO_PC_Johnson 001328

When Lamont handed Poop the gun, Poop clicked it twice to shoot Victim and it wouldn't shoot.  Victim ran into store.  Inside store, Victim was holding some guy [Shield].  Poop came in with a different gun, bigger gun with a brown handle.  An unknown male told Poop to hit Victim with the gun.  Dorsey ran in and said, "shoot him in the head…he's going to identify us".  She indicated she saw Lamont after the murder, on July 12 *[this was a misstatement of fact that was not corrected]*.  She said, no she saw Lamont the last time she was at the SAO.  She said she was shown a group of photographs and picked out a photograph.  She said the photograph she picked out was Tommy.  *[there is no evidence in the file she was ever shown a photo array with Tommy in it – only that a single, confirmatory photo was shown on 7/19/88.  There is a photo array with Johnson in it which is blank and there are no ECU reports, BPD notes, SAO notes, referring to this array.  The only array apparently shown to Snead contained the Shooter.  The signature above his photo, however, appears to be the detective's handwriting and misspells Snead's name]*

On July 28, 1988, at 9:00pm, BPD showed 2 photo arrays to two witnesses with negative results.  One array contains Orni Carroll.  The second array is unknown.  There are no notes to indicate who these 2 witnesses who viewed the arrays were.

On July 29, 1988, report stated that Det Davis and Boone went to the home of Deborah McFadden.  She was interviewed.  She said Johnson and Shooter did rent a room in her house.  Both sold drugs, had guns and Johnson often drove rental cars.  She knew one gun to be a revolver.  Also, July 29, ballistics were completed.  The handwritten notes are in conflict – as to the question of whether there were guns in the house, officer wrote:  1 revolver.

On August 1, 1988, Tommy Carroll was arrested at the Mitchell Courthouse and transported to Homicide.

On August 1, 1988, an arrest warrant went out for Shooter.  Also, on August 1, 1988, Donzella Carroll, Tommy's mother, was interviewed at the SAO and shown a photograph of Shooter who she identified as Alvin Hill, aka Poopie [Shooter].

On August 2, 1988, 12:15pm, photo array dated with the name Lakisha Snead on top of Shooter's picture.  There are no notes on the photo array.  The handwriting appears

9

to be not that of Snead and her name is misspelled.  There is an offense report saying the array "was shown to a witness and the witness positively identified photo #1" (Shooter).

On August 8, 1988, witness Kenneth Allen was interviewed by police.  He said he was walking to the Night Owl Bar just before the murder.  He passed Tommy's house at 3610 Lucille.  Shooter came out and mistook Allen for Victim.  Shooter told Allen that he was going to shoot Victim.  Allen continued to bar and went inside.  He saw Victim and Dorsey fussing.  Dorsey was telling Victim not to go anywhere.  Shooter came up and produced a gun.  Victim broke free from Dorsey and ran into the bar.  Shooter ran in after Victim and shots rang out.  Allen ran.  BPD brought up Tommy and Orni asking where they were.  Allen said he saw Tommy and Orni by the fence.  Allen said "Officer Steve" was there, got out and chased Tommy and Orni.  Dorsey ran up behind Allen and Dorsey ran into his own house.  Only Shooter had a gun, no one else had a gun.

The prosecution report prepared by Detective Davis does not reflect the interview transcription.  The report states that Allen will testify that Shooter was looking for Victim because the Victim owed Johnson drug money.  He will testify that Johnson and Tommy Carroll were in the area when the shooting took place.

On August 11, 1988, an arrest warrant went out for Johnson.  Deborah McFadden identified Johnson in confirmatory picture.

On September 4, 1988, Shooter was arrested.

On September 16, 1988, Shield ID'D Shooter in array.

On September 22, 1988, an anonymous call came in saying Johnson was locked up for drug charges under the name "Troy Smith".

On October 24, 1988, Johnson was arrested.  Johnson gave a statement.  He was sitting on Ms. Irene's porch at 3512 Lucille Avenue.  He started walking toward Reisterstown Rd, but never made it across because he saw Alvin Morgan (son of Irene). He saw Orni, Tommy, Shooter, Dorsey and Kenny Allen all walking across Reisterstown Rd.  Johnson stayed with Morgan.  Johnson knew that Orni and Tommy wanted to beat up Victim over burning the Jamaicans, Jamaicans went to Tommy's house.  Tommy and Orni had on all black.  Johnson walked back to Irene's porch with Alvin Morgan.  As he arrived at porch, heard 3-4 shots.  He saw Officer Steve chase Orni and Tommy Carroll up the alley behind their house.  He saw Tommy and Orni run out of the front of their

SAO_PC_Johnson 001330

house, across the street and into another house.  Officer Steve came out of the alley. Johnson spoke to Officer Steve and said he heard some shots.  He then returned to Irene's porch with Morgan and his brother Maurice.  Johnson saw Tommy later and drove him to his gf's.  Tommy told him they had Victim at the fence.  Orni pulled gun out that didn't work.  Victim got free, ran into bar.  Shooter chased him, shot him.   Johnson saw Shooter later.  Shooter advised he shot Victim because Victim reached for his gun in the bar.  Victim had stolen money from the Jamaicans that was supposed to go to Orni and Tommy who were selling for the Jamaicans.  Johnson said, "I will take a lie detector test. I wasn't there when [Victim] was killed." *[Johnson not spoken to by SAO at any point before 4/20/2018 and no conversations with BPD after arrest statement]*

On November 10, 1988, Johnson was indicted.  After this point, there are no additional notes or reports of further investigation.

There is no evidence that the information provided by Johnson was tested.  There was no pre-trial identification procedure documented as having been done as to Johnson or Reginald Dorsey and there was none referred to at trial.

Alvin Hill (Poopie, Shooter), Tommy Carroll, Jerome Lamont Johnson (Lamont, Johnson), and Reginald Dorsey (Buttons) were all charged as co-defendants.

Initial Discovery went out at some point, no date.

On February 15, 1989, Defense discovery arrived at SAO.

There was one postponement – to consolidate the cases.

On March 8, 1989, trial began.

On March 15, 1989 – Johnson, Shooter, and Dorsey convicted.  Tommy Carroll was acquitted.

On April 21, 1989 – PSI report done.  Johnson reiterated that he was not present.

On May 10, 1989, letter in file from Gordon Tayback, counsel for Johnson, "reiterating the request that you [the State] consider a polygraph examination of Mr. Johnson.

June 2, 1989 – Motion for New Trial raised by Johnson's attorney, Gordon Tayback.  Tayback references the PSI report of Reginald Dorsey during which he told investigators that Orni Carroll pulled the 1st gun.  No mention of Johnson.  State's

SAO_PC_Johnson 001331

response was that Defense could have gotten Orni Carroll in for trial and did not, that Johnson "decided not to take the stand, to deny he was involved…"  Motion denied.

June 2, 1989 - continued into sentencing.  Johnson allocutes that he is innocent and was not present that night.  He further advised he was on the corner with Alvin Morgan at Lucille and Reisterstown Road.  He further said he was walking up the street when he heard shots, that he saw PO Steve Owens.  Johnson continued with same information provided police at arrest and stated that he is innocent.  Dorsey allocates and says, "Lamont Johnson wasn't at the scene of the crime.  He was standing on Lucille and Reisterstown Rd."

Johnson sentenced to life plus 20.

TRIAL

*Judge Joseph Pines presiding.  Albert Phillips for the State.  Attorney Gordon Tayback for Jerome Lamont Johnson.  Attorney William Porter for Thomas Carroll.  Attorney Morris Lee Kaplan for Reginald Dorsey.  Attorney Joy Phillips for Alvin Hill.*

March 8, 1989
- arraignment
- jury selection

March 9, 1989
- jury instructions
- opening by state
- opening by Tayback
- Lakisha Snead on the motion
  - knew Thomas Carroll prior
  - numerous pauses
  - [Judge notes that she appears to be scared to death]
- Det. Kevin Davis on the motion
  - I taked to Lakisha very briefly the night of the incident, she was very emotional, I spoke to her again in depth in the State's Attorney's Office on July 19
  - The family provided names
  - when I first saw her that night she was sitting in a radio car or right by a radio car, it was Mayes car or another uniformed officer
- Kenneth Allen
  - hooper is Aaron Taylor [the victim]
  - Butt is Reginald Dorsey
  - Tommy is Thomas Carroll
  - Poopie is Alvin Hill
  - Lamont is Jerome Lamont Johnson

12

- o Lamont was there, coming out of the hole in the basketball court, standing right next to Hill (who had the gun in his hand)
- o Butt/Dorsey was holding Hooper, Hooper broke free and ran into bar, Alvin ran in after him, I heard the shots
- o I saw him point, I heard the shot, I ran
  CROSS EXAM BY TAYBACK
- o when I passed the corner, lamont was there, when I went back he wasnt there
- o when I come out of the Owl Bar, Hill is there, Jerome Johnson and Reginald Dorsey are there, Jerome is right next to Hill on his left
- o Jerome Johnson was there
- o I saw Jerome Jonson coming through the basketball court, who was there at the time
- o In my statement to the police, I said Lamont was standing on the corner of Reisterstown and Lucille
- o I don't believe I have told a lie
- o When lamont was standing on the corner and when Hill and Dorsey was discussing, Lamont walked over to them
- o I only saw one gun, Hill had the gun, Jerome Johnson was there
  CROSS EXAM BY PHILLIPS
- o I do not know Lakisha Snead
- o I didn't see Tommy Carroll or Orni Carroll [which is different from statement to detectives]
- o didnt talk to the police until three weeks later
  CROSS EXAMINATION BY PORTER
  RE-DIRECT EXAMINATION BY PHILLIPS
- Officer Mayes
  - o first officer on scene

- Jung Kim (female)
  - o working at the Night Owl
  - o a guy came in, and another guy came in and grabbed his neck, I thought they were playing so I didn't pay attention, when I looked again other guys had come in, one guy took a gun out of his pocket so I called the cops, when I called the police I heard some shots
  - o I was not able to see the person who shot him because of the partition
  - o I was able to see the person who shot the gun at the guy who came into the bar
  - o I see him in court [identifies Hill]
  - o picked him out of a photo array
    CROSS EXAMINATION BY PHILLIPS
  - o I had seen hill before in the business
    REDIRECT EXAMINATION
- Marvin Reid
  - o I had gone to the bar to get some food, I was at the vending machine when a guy came in screaming "don't do it", the guy grabbed me by the neck and was pulling me back away from the door
  - o I was trying to turn myself around and get the guy off my back, somebody came in and yelled "duck, duck", I grabbed my face and went down to the ground
  - o There were at least 3-4 shots and the guy fell on me, he fell to the ground

13

- o   he tried to crawl to the entrance, then he just stopped
- o   I didn't see who fired the shots
- o   when I got to police headquarters we all noticed a piece of lead on my shoe
- o   I had noticed people on the basketball court when I was going to the bar

Joseph Kopera
- o

March 13, 1989

Lakisha Snead
- o   15 years old
- o   Aaron Taylor was my cousin, he was Hooper
- o   was heading to the Night Owl, saw him at the Night Owl talking to Poopsie
- o   [identifies Alvin Hill]
- o   he was also talking to Buttons [identifies Reginald Dorsey]
- o   Tom and Lamont were also there [identifies them in court]
- o   they were all in front of the bar, along with another boy
- o   my cousin ran into the store and Poopie pulled out a gun and shot him in the back
- o   Lamont handed him another gun, he took it out of his dip, p. 17
- o   Aaron was in the store holding someone in front of him
- o   that man broke free and ran out of the store
- o   that's when I ran from the store, I heard the shots when I crossed the street
- o   identified Poopie in a photo array
- o   page missing
- o   identifies Buttons in a photo array
- o   I identified four people, there was one more there (I do not know that person)
- o   [direct examination concludes]

Dr. Charles Paul Kokes
- o   OCME
      CROSS EXAMINATION BY TAYBACK
- o   there were no injuries consistent when having been struck with the barrel of a gun
- o   the victim did not sustain any gunshot wounds

- Lakisha Snead
  - o   DIRECT REOPENED
  - o   as I was running out of the bar, I heard Buttons say "hit him with the gun"
  - o   Poopie hit him
  - o   Buttons also said "shoot him"
  - o   Poopie said to my cousin and to the man with him "if you don't move< I'm going to shoot both of you all"
        CROSS EXAMINATION BY TAYBACK
  - o   Tanya (my friend) and Quinten (my mom's boyfriend) went with me to the store
  - o   I testified before the grand jury [July 28, 1988]
  - o   I told the grand jury that my cousin was with 5 other males
    - ▪   three were standing on the playground and two were standing [unreadable]
  - o   I testified earlier today that Poopie pulled out the gun and it didn't work and someone handed him another gun

14

CROSS EXAMINATION BY KAPLAN
REDIRECT EXAMINATION
o  what I have said in court today is what happened that night
RE-CROSS EXAMINATION BY PORTER

March 14, 1989
Det. Kevin Davis
o  Dorsey and Carroll arrested at the scene
CROSS EXAMINATION BY TAYBACK
REDIRECT EXAMINATION
STATE RESTS
o  Tayback mentions having summoned Officer Owens, but doesn't know if he will be available
o  Tayback hope's the Major's office has gotten to the officer, the officer was subpoenaed, "I have his report and what he is going to say."
OPENING STATEMENT BY PORTER
Pearl Dilworth called by Kaplan
o  Reginald Dorsey's mom
Yolanda Williams, called by Kaplan
Tayback still trying to get in touch with P/O Owens

March 15, 1989
-  Tayback went to police station to find Owens but he was not working, Tayback proceeds without Owens
Jury instructions
Closings begin
Tayback closing begins
o  goes on and on about Lakisha Snead testifying under oath before the Grand Jury
o  closing ends
All the rest of the closings
Jury note, p. 114
Verdicts


<u>RE-INVESTIGATION</u>

On August 29, 2017, Nancy Forster met with ASA Andrea Mason.  Lauren Lipscomb joined the meeting about 75% of the way through.  At the meeting, Nancy presented a binder of information about this murder.  She presented the following new witnesses:

1)  Deborah McFadden – 1993 PC testimony - said she saw Johnson across Lucille when shots rang out (PC denied and case not re-opened)

2)  Alvin Morgan – 1991 letter to Johnson and 1997 affidavit said he was with Johnson on corner of Lucille at time of murder

15

3) Tanya Lazenby – @time, mother refused to let her be interviewed by BPD and she was not approached by SAO.  Lazenby was interviewed for the first time in relation to this case by Nancy.  Lazenby was with Snead the night of the murder and her version of the events match Snead's initial statement made to PO Jones the night of the murder, *which statement appears to have not been disclosed.* Lazenby stated they were in the bar when they first noticed a tussle.  Shooter came in, Victim grabbed Shield and was shot.  Lazenby says there was no gun exchange or handing.

4) Alvin Hill (Shooter) – affidavit from year 2000 in which he admits to shooting and killing Victim.  He further stated that Johnson was not present at the time of the shooting.  *Shooter died in prison ~2016.*

Nancy asked us to consider the totality of all the evidence known from trial or developed thereafter and the new pieces above.  There was enough indicia of innocence to open a re-investigation.  Following the meeting with Nancy, our law clerk was provided with a list of documents to begin gathering including the SAO file, BPD file, and to brief the transcripts.  Over the course of the following months, documents were gathered and reviewed.  The re-investigation plan was developed to strategize which witnesses to bring in, timing of bringing witnesses, etc.  By the end of December 2017, we had a plan and began hunting down location information of witnesses, determining whether they were alive, local or deceased.  Throughout, we have remained in contact with Nancy.

**The State's evidence as to the Johnson:**

1) Kenny Allen – at trial, placed Johnson at the scene of the murder *(though in his August 1988 interview, he did not mention Johnson as being present)*

2) Lekisha Snead – at trial, said after the 1st gun misfired, Johnson handed Shooter the gun that was used to kill Victim

SAO_PC_Johnson 001336

## Preliminary Observations during Document Review

### Lacking Pre-trial Identification Procedures

  There is no evidence in the SAO or BPD file nor have we located any evidence that suggests Snead knew the Johnson before this incident or the trial. But, she did know Tommy.   Snead was 15, Johnson (21) and this group of guys were all in their early 20s and sold drugs at Lucille/Reisterstown Road.   Snead was 14/15 and was the youngest of several siblings living in a home at 3443 Virginia Ave (this house has been razed).   Her older sisters dated/got high with Dorsey and Tommy.   Snead's initial interview on 7/14/88 is different than her grand jury testimony is different than her suppression motion testimony is different than her trial testimony.   She changes names, whether or not photo arrays were done, who she identified, etc.   At the grand jury, she says she was shown a photo array with Johnson in it, but she picks out Tommy.   Tommy was never put in an array, he was a singular confirmatory picture shown to her.   Her signature on the photo array with the Shooter in it appears to have been written by a detective and her name is misspelled.

### Identity of Johnson

  Detective Davis indicates in his report from 7/15/88 that he met with the family (not present at murder) and the family named the Johnson as being involved.   At trial, Detective Davis testifies that the family gave him names of people involved.   There were no pre-trial identification procedures conducted as to this Johnson, Dorsey or Carroll with any of the witnesses in this case.   There are photo arrays in the file that are not marked and not referenced in any reports.   There is indicia that a photo array containing Johnson MAY have been shown to Snead, but she did not pick him out – because someone did compile a photo array with Johnson in it that is blank.   Also, a photo array with Orni Carroll was compiled and appears to have been shown to an unknown person, negative results.

SAO_PC_Johnson 001337

**Johnson's alibi**

The Johnson's alibi was not investigated by BPD or SAO pre-trial.  There are no notes, reports, or any information to suggest that Alvin Morgan, Deborah McFadden, PO Steve Owens, Irene from the porch, or any of the other 11 officers who searched 3610 Lucille following the murder were interviewed by the SAO.    Deborah McFadden's interview handwritten notes from an interviewing Detective (1 revolver in home) differed from the Prosecution Report prepared by Detective Davis (multiple guns in home per Davis).  The Defense tried multiple times to get PO Owens in for trial.  The State appears to have not participated in these efforts.  Ultimately, Defense is told PO Owens is on vacation.

**Evidence of unknown person – Orni Carroll**

The lead as to Orni Carroll was not followed up on.  Orni Carroll was placed in a photo array and shown to an unknown person – no notes of who was shown what.

**Photo Arrays in File**

There are multiple photo arrays and pictures in the file.  There are 3 positive photo arrays of Shooter, including the one with Snead's name.  There is an array with Orni Carroll and Johnson.  Pictures of Dorsey and Tommy Carroll.  The reports often refer to "witnesses" being shown an array with no indication of who these people are.

**Snead's Grand Jury**

Snead's initial statement to PO Jones 30 minutes after the murder does not match her interview on 7/19, grand jury, suppression motion, or trial statements.  The latter 4 change details on the roles of the guys and sequence of events.  In her grand jury testimony, for example, Snead indicates she viewed a photo array in which she picked out Johnson, but then named him as Tommy.  Further, she said she viewed photos on July 12, 1988, and the ASA didn't correct her, then doubled down on that being the correct date of showing the pictures.  Snead was shown a confirmatory picture of Tommy, who she knew from her sister.

**Snead's Trial Testimony**

SAO_PC_Johnson 001338

We noticed a fair amount of leading Snead on identifications.  For example:

ASA: Did you see Thomas Carroll 7/14/88?

No A: * Pause* witness needs water

…

ASA: Are you ready to proceed…

ASA: Ms Snead you need to answer my questions now, you just picked

out Thomas Carroll, did you see him that night?

No A: *still silent, approached the bench – RECESS CALLED*

**…**

Snead: Saw Carroll, Hill, Hooper, other UNK boy

ASA: Anyone else?

Snead: And Lamont


**PO Steve Owens**

  This PO is mentioned on 7/28/88 by Dorsey when he was interviewed.  He mentioned
PO chasing Tommy and an unknown male.  There was also a report that PO Owens and
McDonald were sitting in the block in an unmarked car when this broke out.  Further, on
10/24/88, Johnson mentions PO Owens as a person able to corroborate that he was up
Lucille when murder happened.  However, there is no indication that PO Owens was
interviewed pre-trial by BPD or SAO.  There appeared to be no SAO attempts at trial to
assist Defense with getting PO Owens into Court.  Defense placed multiple calls to
NWD, went to NWD, was told PO Owens was working, then not, multiple calls to his
house – no return call.


**Discovery**

It appears initial discovery was done.  There does not appear to be any supplemental
discovery done.  There are no SAO notes of any of the identifications or interviews
taking place at the SAO, i.e. Snead's 7/12/88 interview during which she was shown
Tommy's picture.  That identification was not disclosed to Defense and was the subject

19

of a motion for mistrial.  There is no indication that any of the other blank arrays were given to Defense.  There is no indication that the ASA attempted to contact Alvin Morgan, Deborah McFadden, any of the 11 search officers, PO Owens, nor are there notes that the ASA directed BPD to do any follow up in any of these areas.  The initial statement made by Snead appears to have not been turned over at any point pretrial or during trial.

**Discovery of Additional Suspects**

  It appears that the names of Johnson, Dorsey, and Tommy were given to police by the Snead family members who were not present at the murder.  Dorsey and Tommy were known to Snead.  Shooter was not known, but Snead ID'D (others ID'D Shooter, this is a solid case as to Shooter). Johnson, Orni and Allen appeared unknown to Snead.  Co-Defendant Dorsey indicated at sentencing Johnson was not present.  Shooter gave an affidavit in 2000 saying Johnson was not there.  Tommy Carroll, see interviews, says Johnson was not there,

<u>**WITNESS INTERVIEWS**</u>

**PO Steve Owens – (New evidence)**

  Interviewed by phone 3/13/18 following weeks of trying to locate and track him down. He called Lipscomb.  He said he has only a vague memory of the case.  Does not know Johnson, Dorsey, Victim – never knew them.  Confirmed he went to Pimlico Junior High and lived in the area.  Then, said he was starting to remember a murder and referred to the Victim by his nickname, "Hooper", which had not been used in the conversation.  I got Andrea in during the interview.  She had his report and I asked him whether he remembered writing the report – negative.  I asked if he saw pictures, might he remember these guys – maybe.  Following the call, texted him the report copy and pics of Dorsey, Johnson.  Tried calling – no response to date.  He lives in PA in the same neighborhood as Sean Suiter's family.  I found him in part because he showed up in Google having given a comment to the news following Suiter's death.  Throughout our investigation, it has become clear that Owens's lack of memory is odd.  Dorsey, Johnson, Tommy, Alvin

SAO_PC_Johnson 001340

Morgan all remember PO Owens as being there that night.  PO Owens attended Pimlico
Junior High with Dorsey, Victim and Johnson.  Owens was friendly with them.
Moreover, Owens is called out by name in several interviews.


**Investigator Tony Wilson - Nancy's Investigator**

  Lipscomb spoke to Wilson over the phone.  Wilson interviewed Lazenby and tried to
track down Snead.  Lazenby gave her affidavit – matched Snead's initial police report.
Snead refused to cooperate and be interviewed.


**Reginald Dorsey – 3/14/18 (Newly Reviewed Evidence)**

  After a few reschedules, Mason, Shaw and Lipscomb traveled to WCI to interview
Dorsey.  *Notes attached (Attachment A)*.  Insists Johnson was not present during this
incident.  Called it a miscarriage of justice.  He has not been interviewed by SAO or BPD
since trial and has not seen Johnson since early 1990s.


**3/19/18 – Looped in Mid Atlantic Innocence Project**


**Marvin Reid (Shield)– 3/27/18**

  Reid interviewed over the phone by Lipscomb.  Reid's recollection of the event is
exactly as he testified to back in 1989 and 1988.  He was there getting something to
drink.  He went to get a soda when he was grabbed from behind by Victim.  Shooter
came in.  He and Victim fell to the floor, Shooter killed Victim.  Reid remained at scene
until police arrived.  He did not know anyone involved.


**Tanya Lazenby – 4/5/18 (New Evidence)**

Lazenby came in and was interviewed at the SAO by Mason, Shaw, MAIP Tafti and
Lipscomb.  *Noted attached (Attachment B)*.  Said she and Snead went to the Night Owl
that night.  She saw Victim arguing with 2 guys outside.  Then, Victim came in, arguing
continued.  Victim grabbed Shield.  Shooter tried shooting but gun jammed.  Other guy
saying to shoot Victim.  Then, Shooter fired shots.  She ran outside and hid.  Snead ran.
She is adamant that Johnson was not there.  She said the only people in the bar were

21

SAO_PC_Johnson 001341

Victim, Shield, UNK person, Shooter, Reginald Dorsey, Snead, her and the "Koreans". Only 1 gun.  Only 1 person, Shooter, had a gun.  Has not spoken to Snead since the murder.  Has not spoken to BPD or SAO.

**Donald Parker – 4/6/18 (New Evidence)**

Parker came in and was interviewed by Mason, Shaw, MAIP Tafti, and Lipscomb at the SAO.  Parker is Victim's brother.  *Notes Attached (Attachment C).*  He began the interview making it clear he feels all the defendants have done enough time.  He also indicated the only reason cooperating is because we are looking to make sure we got it right.  He was much older than his brother and these guys.  He was up the street when he got news of the murder.  Police told him to stay out of it.  He recognized Shooter's pic and Orni Carroll.  He did not recognize Johnson or Dorsey.  He said he remembered his brother was supposed to have owed some money, denied Jamaicans were involved.  However, the money being owed corroborated Dorsey, Johnson's and Tommy's stories of the back drop.  Parker wouldn't have necessarily known about the Jamaicans.

**Gwendolyn Taylor – 4/15/18 (New Evidence) (Vic's NOK)**

Ms. Taylor is Victim's mother.  She came in to be interviewed at the SAO with Mason, Shaw, MAIP Tafti, and Lipscomb.  *Notes Attached (Attachment D).*  Started out saying they all are guilty, she knows for a fact that Johnson was involved.  By the end of interview, she understood why we were investigating and that, since she was not present, she couldn't know who was involved.  She told us she is ok with whatever the result of this is.

**Jerome Johnson - 4/20/18 (New evidence)**

Johnson was interviewed at Roxbury with Mason, MAIP Tafti, Nancy Forster, and Lipscomb.  *Notes attached ((Attachment E)* Johnson stated he was not there, he was with Alvin Morgan up the street.  Toward the end, Johnson asked to present us with his own argument.  He then reviewed the case and the facts as he knew them.  Mason and I noticed that Johnson did not know or confused many uncontroverted details, i.e. layout of the bar in relation to where everyone was, where the arguments took place, location of

SAO_PC_Johnson 001342

the Shooter.  At one point, Andrea interrupted him to say that she was unable to follow what he was saying.  She and I were struck by how it was clear to us that he just was not there.  He only knew the facts as presented through what he heard at trial.

**Interview arranged through ECI on 4/26/18 – Tommy Carroll Jail Call**

Following arranging this interview, we pulled up Tommy's jail calls.  Case management had only been told it was about a 1988 murder and Tommy was not a suspect.  Within a few days, Tommy called a male and stated that Homicide is coming up.  He said he beat the charge but Johnson had nothing to do with it, "he wasn't even there!"

**Alvin Morgan – 5/1/18 (New Evidence)**

Mason, Shaw, Lipscomb and Tafti interviewed Morgan at the SAO.  Mr. Morgan is extremely sickly and had to postpone the interview several times. *Notes attached (Attachment F)*  At one point, Mason and I were advised to interview him while he was hospitalized at Sinai, but when we arrived, he had been discharged.  Mr. Morgan was very clear on everything that occurred that evening.  He stated he was with Johnson at the corner of Lucille and Reisterstown Rd in front of the stoop.  After shots rang out, they saw PO Steve.  He drew a diagram of where they were at each point of the evening.  His statement matches Johnson's, Dorsey, McFadden's testimony from the PC, and Tommy Carroll's.  It also matches Lazenby in that Johnson was not at the scene of the murder. Finally, it matches Allen's statement to police that Johnson was not present.  Mr. Morgan has not seen or talked to Johnson in many years, has not talked to Tommy/Dorsey/or McFadden at all.  He indicated that if Johnson should be locked up, then so should he. He has not spoken with BPD or SAO at all.

**Allen Snead – 5/2/18**

Mason, Shaw and Lipscomb arranged a phone call with A Snead on 5/2/18.  He asked whether we were calling about the case for which he is convicted.  When we said no, he ended the call.

SAO_PC_Johnson 001343

**Deborah McFadden – 5/2/18 (New evidence)**

Mason and MAIP Tafti interviewed McFadden.  She claimed to have no memory of anything.  *Notes attached (Attachment G).*

**PO Kenneth Jones – 5/2/18 (New Evidence)**

Mason, MAIP Tafti, and Lipscomb interviewed PO Jones at SAO.  PO Jones remembered the position of Victim's body.  He recognized his handwriting on the report taken of Snead's initial interview.  He had no real other memory outside of working with PO Owens, Constantine, and Mays.  He was not interviewed for trial or called at trial.

**Tommy Carroll – 5/3/18 (New Evidence)**

  Mason, MAIP Tafti, Shaw and Lipscomb traveled to ECI to interview Tommy.  *Notes attached (Attachment H).* Tommy was clear that he was there and Johnson was not there. He further advised that Dorsey had nothing to do with the murder.  Tommy has not been interviewed by BPD or SAO, no one since the trial.  He has not seen Johnson since early 90s.

**Ditra Snead – 5/4/18 (New Evidence)**

Ditra was extremely difficult to get in. Multiple interviews were scheduled, she FTA'D. Finally, she was tracked down at work.  She came in and was interview by Mason, MAIP Tafti, Shaw and Lipscomb.  *Notes attached (Attachment I).*  Her position is that if one is guilty, they are all guilty. They all were friends, guilt by association.  She was adamant that Johnson was there but couldn't identify pictures.  She was at the house when news arrived of Victim's death.  She was in and out, though was using drugs so doesn't remember a lot.

**Lekisha Snead – 5/16/18 (Newly Reviewed evidence)**

Snead was very difficult to track down.  She is a current drug user.  Kelvin and investigators finally found her 5/16/18 on North Avenue.  They contacted Lipscomb who was at her son's school for a teacher meeting.  The investigators responded to the school bringing Snead with them.  We met next door in the parking lot of Loyola.  Lipscomb

24

recorded the interview as it took place in the car with Al Marcus, Kedrick and Snead. *CD is available*.  Snead's recollection of events is exactly as indicated to PO Jones the night of the murder.  She remembers Shooter, Victim and 2 guys.  She does not talk about a gun handoff or misfiring.  She remembers only 1 person having a gun.  She said, there was only 1 gun.  Like Ditra, she indicated that if one is guilty, they are all guilty as far as she was concerned.  She had no recollection of names mentioned.  She had not talked to BPD, SAO – no one at all about the murder since the trial.  She remembers going to SAO and she thinks that she identified all 3 in a photo array.


**Jail Calls**

Johnson – multiple jail calls reviewed by Mason, Lipscomb, Shaw.  Johnson maintains innocence.

Tommy – multiple jail calls reviewed by Lipscomb, Intern, Mason.  Tommy talks about how Johnson was not at the murder

Dorsey – multiple jail calls reviewed by Shaw, Lipscomb.  Talks of his own case and how he has been wrongfully convicted as well.


**Kenneth Allen - not located despite many attempts over months.**

**Desiree Snead – deceased**

**Juandre Mims – deceased**

**Mignon Snead – deceased**

**Man known as Quinton – not able to locate without a last name, no witness had a last name**

SAO_PC_Johnson 001345